The case for argument is Baca v. Colorado Department of State. Good morning. May it please the Court, good morning. My name is Jason Harrow, and I, along with my co-counsel, represent appellants Michael Baca, Polly Baca, and Robert Nemenich. They were three of Colorado's nine presidential electors in 2016, and I just want to acknowledge that both Michael and Robert are here in the courtroom today. Polly wishes she could be here, too. Your Honor, I'd like to reserve four minutes for rebuttal. I understand I have to police that. Yeah, your time is your own, yeah. Your Honors, what this Court previously deemed unlikely in light of the text of the 12th Amendment, which is the removal of a presidential elector from office after electoral voting begins, is exactly what occurred here only three days after this Court issued its prior opinion. And now, with the benefit of full briefing, this Court has the opportunity, at long last, to hold that the Constitution means what it says and says what it means. Presidential electors, like legislative electors, voters, perform a federal function, indeed, perform a constitutional function, when they cast their votes for president and vice president, and that federal function is not subject to control or interference by the state. Well, they are controlled, are they not, by how they are selected? No, your Honor. Isn't that opportunity given to the states? The opportunity to appoint electors is given to the states, exactly. Yes, yes. But that is where the powers in the Constitution ends. The Constitution is one of enumerated powers, and it enumerates this power of appointment. But if they can appoint them, why can't they impose conditions on that appointment? They can, your Honor. Okay. Well, one of those conditions would be that you have to follow the voting that they establish, and if you don't do it, you're out. That's right, and that's in the nature of a pledge. What they can't do is, after voting begins, intervene and enforce that pledge, and that comes for two reasons. One is the text of the Twelfth Amendment specifies precisely four things that the electors must do and do themselves. They must vote, they must make lists, sign and certify, and send to the President of the Senate. There is no room for state interference there. You're placing a lot on silence, aren't you? I mean, just because it doesn't say something doesn't mean you can't do it. It doesn't say you can't. The state doesn't have the power to do it. Your Honor, what the Constitution does is commit electors to a constitutional function. That's the core of their right. That's made very clear in Ray v. Blair, in Burroughs. In those cases, the Supreme Court said the word elector means chooser, the word legislative elector means chooser, presidential elector means chooser, and that can't be controlled. Just like, Your Honor, it doesn't say in the Constitution that legislative electors, voters, cannot be controlled in their votes. But Thornton makes very clear. Actually, states cannot control the votes of individual electors. That would be anathema to the very concept of democracy. Indeed, that goes back to Ex parte Yarborough. Yarborough, which we quote in our brief, is a late 19th century case talking about how the federal courts have the ability to protect African American voters there from intimidation in federal elections. And the reason the court said, and this is a quote, is that the right to vote for a member of Congress is an office created by the Constitution. And so that may not be interfered with. The Constitution doesn't say no enforcement of a pledge, but it's implicit in the constitutional design. The word elector is the same. The function is the same. The federal function is the same. There's absolutely no reason under the Constitution that the interpretation would diverge. And indeed, Ray V. Blair analogizes expressly between presidential electors and voters for Congress people. So it's the Supreme Court, Your Honors, that's making the link that words are to be used the same way. Well, perhaps if the Constitution says what you say it says, and that the electors have these rights, what do we do with the fact that historically electors have basically done as they have been told to do without exercising discretion? Usually. I know there are exceptions. Exactly. That history supports our case, Your Honor, because for most of American history, most of those electors you're talking about that followed their pledges, there was no legal requirement to do so. Indeed, Colorado's legal requirement wasn't adopted until the late 1950s. And for most of its history, the electors had a public expectation. And to be clear, if this court thinks that we're entering an era where perhaps the public expectation is no longer enough to get 99.5% accuracy, which is the history of this question, then there are additional steps the state can take pursuant to its appointment power. The state, for instance, could put up a website, put up public advertisements, say that these electors, in order to be appointed, must go on TV and make a promise. But what they can't do is interfere with the vote. What they can't do is discard the vote once it begins. That bleeds the appointment power into the power to control. Your Honors, if I may make an analogy that I think will illuminate the point, jurors occupy a similar role to voters in this respect, which is, as this court is aware, jurors are instructed about the law. They're told to follow the law. But then something happens. Then they're impaneled, and they deliberate, and the state can no longer interfere. And this goes back. But in jurors' case, you certainly don't want them taking a pledge of how they're going to vote before they're impaneled, right? That's right. They don't pledge to support the prosecution or defense, but they can take pledges to follow the law. They can take pledges that they are not against the death penalty. They can indeed take pledges that they will listen to the instructions of the prosecution and the judge. But the Supreme Court, Your Honor, it's an 1895 case called Sparf, which is the last time the Supreme Court has addressed the issue of jury nullification. And the Supreme Court there said if they acquit, that is, jurors acquit, the judge cannot grant a new trial, how much so ever they have misconceived, or here's the key phrase, disregarded the law. They have the right to disregard the law because there is no viable way that the state has for interfering. Interesting that I would offer its apples and oranges. I don't think that's a good analogy. Well, Your Honor, then let me go back to the analogy. Let's talk about electors. Let's talk about electors. And there's two types of electors, Judge Brisco. And so I'm happy to make the analogy with regard to voters. As you said, Judge McHugh, it would be very difficult to conceive of a court asking a juror to pledge to support the prosecution. So, too, it's very difficult to conceive the state asking a legislator to support the Democratic Party or the Republican Party. You know, that happens in Cuba. Voters pledge to support the Communist Party there. But it's really anathema to the separation of powers we have here in the United States. Well, then why does this analogy fit? I mean, these analogies that you're trying to find for presidential electors, why do they even fit, if in these circumstances you can't get a pledge from these other folks? I mean, you know, Ray says that the pledge would have been, well, a somewhat different situation, but close enough, says that a pledge would have been constitutionally appropriate there. That is a different situation than people who are voting for congressional races, right, electors? Let me be precise, Judge Holmes, because you're right. What I meant to be explicit about is that what the Constitution says is that the state or the federal government may not enforce any kind of requirement for voting. But political parties, other actors, even individuals, they certainly can pledge themselves to vote. You know, legislative electors can affirmatively announce that they will support a particular candidate. States can indeed even encourage electors to do so by having closed primaries, by having voter registration in a political party, along with regular registration. And can they require them to pledge to do so? You know, the Supreme Court's never decided that. I will say that the difficulty would be with enforcing it. And so most states wouldn't want to do that because they know it's unenforceable. But they're two different things, right? I mean, you know, there's, once you make a public pledge, even if you're not going to be referred for prosecution for perjury, there's an assumption that you won't want to break your word, just from a moral standpoint. And so pledges are ubiquitous in this area. And that's exactly our point, Judge McHugh. I think you're 100 percent right. So pledges are ubiquitous. Over half the states require some form of pledge. But what has never happened before is the actual legal enforcement of that pledge, in an extreme way, by actually interfering with the vote, stopping the vote before those four steps in the 12th Amendment occurred, interfering with that core constitutional function, removing my client, Michael Baca, from the office of presidential elector, discarding his vote, failing to transmit it to Congress. And an elector was substituted, and therefore the electors of Colorado voted. And that's what the Constitution talks about. They don't talk about Mr. Baca having a right to vote. They say electors will vote. And electors did vote. Well, with respect, Judge Holmes, the electors first voted during the first round, and there were eight votes for Hillary Clinton and one vote for John Kasich. The state then deemed one of those votes invalid before that vote was transmitted, before the 12th Amendment was fully complied with, and before that core federal function was fulfilled. So it's true. You know, we don't dispute that the state purported to nominate and send an additional slate of electors. That was inconsistent with the 12th Amendment. And my friends on the other side, my friends from Colorado,  is consistent with the 12th Amendment. It's inconsistent with the provisions governing the counting of electoral votes in Title III. And more to the point, it's fundamentally inconsistent with that federal function that Secretary Williams interfered with. The counting of the vote eventually, what wasn't done here in Colorado, it was done by Congress, right? Correct. And Congress decided to recognize that as a valid vote. Is it the place of the courts now to come in and to tell Congress, you shouldn't have counted that vote? No, Judge McHugh, that's not what we're asking. Congress can only accept or reject votes it received. And because Secretary Williams interfered with the federal function here and refused to transmit a valid vote to Congress, it couldn't count it any more than, for instance, a state counting authority could count the vote of any legislative elector that was rejected at the ballot box, right? A federal judge can say, hang on, that's illegal, that's wrong. But Congress can't count a vote that it doesn't have. Your Honors, I'd like to reserve the remainder of my time for rebuttal unless there are any more immediate questions. Thank you. Thanks. Thank you, Judge Briscoe, and may it please the Court. I'm Assistant Solicitor General Grant Sullivan. I represent the Colorado Department of State. Colorado citizens exercised their fundamental right to vote in 2016 with a basic expectation, that Colorado's presidential electors would follow state law  Is that expectation consistent with the state of Colorado? It is consistent with the federal constitution, Judge McHugh. I mean, people don't vote for the candidate, they vote for the electors. Well, in Colorado, Colorado follows the short form presidential ballot, so on the ballot it just shows the presidential candidates, and that's consistent with many, many other states. But the short form can't modify or amend the constitution, can it? Your choice to use a short form. That's correct, Your Honors. The only reason I raise it is to show that our country, and this was alluded to in the first set of questions, our country has a longstanding practice of the people voting for presidents, not voting for electors for president. That's why campaigns focus on presidential candidates, not electors, who then exercise. But where in the constitution is it permitted that the state can control the vote of the elector once the elector is selected by the state? Judge Briscoe, it's in Article 2, Section 1. It's the appointment power. Well, that appointing is one thing, and then directing how the actor, the elector in this case, will proceed is another, isn't it? So I think the appointment power is broad, and McPherson says that. It's the broadest determination. And I point, Your Honor, to Title 3, Section 6. Section 6 in the U.S. Code says that states are to certify to the federal archivist the, quote, ascertainment of the electors appointed. The certification occurs in pursuance of the laws of such state providing for such ascertainment. So until that certification occurs to the federal archivist, the state's appointment process is not complete. It can be revised, electors can be replaced, and that's what happened here. The state of Colorado never certified Michael Baca to the federal archivist. Can they be revised and replaced based upon how they voted? Yes, they can, Your Honor. Under your statute, yes, but under the Constitution? Yes, they can. Our country, again, there's a few reasons for that. Let me start with the Twelfth Amendment, which my friends rely on on the other side. The Twelfth Amendment does not mention, much less abrogate, the broad grant of authority given to the states in Article 2. And I think that's telling. If the drafters of the Twelfth Amendment had intended to cabin the state's authority, they would have done so explicitly by at least mentioning Article 2. They didn't do that. The other thing, and this was, I think, Judge Holmes, you asked this, the Twelfth Amendment, while certainly detailed, it's silent on many issues. It does not say, for example, what happens if an elector dies the night before the vote or what happens if an elector just doesn't show up the day of the vote. The states have to have the right to replace those electors. But it does say what happens if they vote. I mean, it spells it out in quite unusual detail for the Constitution of what the vote happens and a series of steps are triggered, and there's nothing that would suggest that if you don't like the vote, you can replace the elector. It is a very detailed amendment, Judge McHugh. I agree with that. But the purpose behind the Twelfth Amendment was driving at a different problem. The purpose behind the Twelfth Amendment, and this is shown in the history leading up to the ratification of the Twelfth Amendment, it was to help facilitate what had become the common practice of electors being bound to specific candidates. That practice had resulted in what Ray called the, quote, intolerable problem of an electoral college tie. Before the Twelfth Amendment, there was no way to distinguish on the ballot between the vote for president and the vote for vice president. So we had ties. So the Twelfth Amendment was designed to get around that problem. So you would cast distinct ballots for president and vice president. That's the only problem that the Twelfth Amendment was designed to attack. Well, and prior to the Twelfth Amendment, we had already had anomalous votes from electors. In fact, in the election right before adoption of the Twelfth Amendment, there was a vote cast that was contrary to the pledge of that elector. And yet, when they amended the Constitution with the Twelfth Amendment, they didn't take out the word elector, which suggests choice, and they didn't do anything to suggest that the state's power to choose the elector in the manner it wants to select them gave them a power to actually cast the vote themselves, essentially keep putting people in until they get the vote they want. I'll certainly concede that there were differences of opinions amongst the founders about what the purpose of the Electoral College was. And McPherson talks about this. McPherson goes through the different views of the founders. But then McPherson says that... Well, it was protect us from the unwashed masses that vote, right, from the mob. Some founders did hold that view, but other founders said that the president is to be elected by the people at large. McPherson goes through some of these differing views, but then McPherson says that the founders, quote, reconciled these differences of opinions by leaving it to the states to decide what the proper role of the elector was. Now, some states, like Colorado, do choose to bind their electors, but not all states do. Twenty states have decided not to bind their electors, so in those states, the role of the elector is slightly different. But in Colorado, as in 29 other states and the District of Columbia, the sole function of the electors is to fulfill the clerical task of certifying and transmitting the vote to Congress, similar to what a canvassing board does. A canvassing board does not seek to superimpose their own will on top of the will of the voters. Where do we find the state's authority to bind the electors' vote, how the elector votes? It comes from case law. Ray V. Blair says that a pledge is acceptable. Think about what... But Ray V. Blair also says we don't know... We certainly don't have any reason to believe you could enforce the pledge, but you can make them take it for the very thing that was raised earlier, that whether the pledge is legally enforceable, it has some power for people that don't want to be seen as publicly breaking their word. I agree that Ray V. Blair left open the enforcement question, but think about what plaintiffs are asking here. They're saying... They recognize, as they must, that requiring a pledge or an oath is acceptable. But then they say that actually enforcing that pledge or oath can't be done. So, in essence, what they're asking for, they're asking this court to recognize a new constitutional right for electors to lie. That cannot be what the Constitution requires. How about a new constitutional right that's an old constitutional right that's found in the 12th Amendment? Again, I disagree that the 12th Amendment addresses this issue. The 12th Amendment... What gives the state the authority to bind the vote? Again, I ask the question. Again, it's in Article II. It's their broad appointment authority. I point, Your Honors, again, to Title III, USC Section 6. Until the state's certified to the federal archivist the identity of their electors, the appointment process is not complete. Vacancies can occur. We don't know what's going to happen the day before the election. Electors might die. Something like that could happen. There's got to be a process to replace electors in that type of situation. That's what Section 6 contemplates. Let me interrupt. If the state... There were some citizens' referendums that electors should not be allowed to vote for a candidate who did not release his tax returns. If Colorado thought this was a great idea and said the electors... Our state says electors are not allowed to vote for anyone who didn't publicly disclose his or her tax returns. Is that fine? I don't think that would be fine. Why isn't that fine? I think that... They have complete power to control these electors. So Ray discusses that the appointment power is subject to other constitutional limitations. And one of those limitations is going to be that you can't add qualifications... Well, aren't you adding a qualification that they win the general election in Colorado? No. That is a condition put on the electors. But we're not... Colorado doesn't have any sort of law that says you have to disclose your tax returns or you have to be a Democrat or anything like that. That would be adding a qualification to the office of president beyond what's put in Article 2. Well, you're saying you can't... As an elector, you can't vote for anyone who didn't release your tax returns. As an elector, you can't vote for anyone who didn't get the majority vote in the general election. I think we need to draw a distinction between conditions put on electors and conditions put on the office of president. They're two different things. The state certainly can put conditions on the office of elector. They can't put extra conditions beyond what's in Article 2 for the office of president. They have to be 35 and a natural-born citizen. I thought Judge McHugh was speaking about a requirement the electors release their tax returns. No. Presidential candidate. I took the question to be president. But it's a restriction on how that person can vote. It is a qualification for the elector. That is, you cannot, in the hypothetical, you cannot or maybe you should, however they want to draft their qualification, vote for this individual because of a tax return or not tax return filed. I view the tax return in any other sort of qualification on the presidential candidate. There are some qualifications, but yet there are, there's only some qualifications that are permitted, but others are not. And I don't know where we draw that line. Well, again, I think the distinction is qualifications for candidates for president and conditions put on... No, we're determining how the elector can vote. Who can the elector vote for? A person that has a tax return filed or not. Doesn't that determine how that person is to vote? That would be an extra condition on the office of president that would not be permitted, in our view. No, it's a condition on the voting of the elector. You are cabining the elector's choice to persons who may or may not, depending on how you draft your qualification, file a tax return. You're determining how that person will vote, just like you are in the statute at issue. I view them as two separate issues, Your Honor. I take it you view it as a situation where if they impose a condition that the elector would have to vote for a president who was over 40, a presidential candidate who was over 40, then that is not a condition that's placed upon the elector. That is an additional requirement that's placed upon the presidential candidate. That's exactly right. We can't violate the conditions in Article 2 that say presidential candidates... Yeah, hypothetical. Presidential candidates, the only requirements are you have to be 35 and a natural-born citizen. Colorado cannot add requirements onto that. Your Honors, I do want to touch, just briefly, I know that most of the questions have gone to the merits, but I don't want the standing issue to get lost. I think the standing issue is very important in this case. It's a threshold jurisdictional question. I don't think plaintiffs dispute the basic premise that the political subdivision doctrine bars subordinate state officers from suing their state to invalidate a state law that they perceive to be... I don't... I'm not convinced the political subdivision doctrine has anything to do with this. We're not dealing with a political subdivision. Haven't our cases said we're looking at whether you have a personal injury as to an institutional injury? Isn't that really the issue here? City of Hugo gets at that, Your Honor. I think here the only fair rating of the complaint is that they have brought these claims in their role as presidential electors. The very first sentence of the complaint says, the Colorado Department of State, acting through its secretary, and under color of state law, threatened and intimidated plaintiffs in the exercise of their federally protected rights as presidential electors. Well, you're taking their vote. As you did in Kerr... I mean, Kerr would suggest, Coleman would suggest, that that is a personal injury. And if that is a personal injury, the political subdivision doctrine, to the extent that it applies to individuals, correct me if I'm wrong, it's when you're vindicating an official right. Well, that's not what's at play here. I mean, what's at play here is, per Coleman and per the Kerr decision, is that you're rendering not their personal right, their right as an elector to exercise their responsibility. I don't think there is any personal or individual right to serve as an elector. They have asserted their injury to the office of the elector. They're saying that Colorado's actions have diminished the office, diminished the power of the elector. Well, they might not have a right to serve as an elector. You can't walk in off the street and say, hello, I'm going to be an elector. No, you have to be selected by the state to serve in that capacity. The point here is, then what? Can the state control the vote? They absolutely can. These are subordinate state officers. Case after case. Yes, but going back to the standing issue, focusing on standing, Mr. Baca was an elector. He wants to be an elector. You took that personal right away from him. He had an interest in being an elector. So I don't see how that is, when he is suing in particular him, he is not vindicating his personal right. That's exactly right. He's not saying, I'm trying to help everyone. The outcome would be, I'm trying to help every other elector. But at bottom, he's saying, you messed with my right. I disagree that they've asserted an individual injury. And I think Allen is a good example. Allen, there were school board members who had an interest in maintaining their job, maintaining their paycheck. They weren't saying that kicking me off the school board is going to diminish the office of the school board. They said that I want to maintain this job I have. And that was what was going on in Allen. Here, that's not what Plaintiff Michael Baca is saying. He's not saying that I wasn't given my nominal $5 or I wasn't given my reimbursement for mileage. There is no personal injury to him personally. It's an injury to the office of presidential elector. Well, he is saying you removed me from my job as a presidential elector, and I had a right to finish my job. Again, I think if it were a personal injury, he would be saying that I've lost something personal to me rather than something to the office. Well, I mean, just as an analogy, I mean, in the context of constitutional litigation, somebody can have a property interest in their job. You know, why, I mean, that is a personal right that they're vindicating when they sue. That's absolutely right. So why wouldn't this in this instance, we're not talking about whether he has a property interest, but he has a personal interest in being able to carry out his job. Why not? I think there's no ongoing benefit to these individuals personally, unlike in Allen where there is an ongoing paycheck, there's ongoing benefits. This is a one-day ministerial job. They arrive at the Capitol, they cast their votes, they collect their $5, and that's it. Which is an incredibly important job, and it's an incredibly important job, and it's not, I don't think anybody runs to be an elector so they can get their $5, right? I mean, that's not what this is about. That's exactly right. There is no individual injury. The importance of the job is the function that it serves for the system of government as a whole, which is an injury to the office, not an injury to the person. Why even have electors? Why don't you just run it out of the Secretary of State's office and say, well, we've counted the votes, we're done here. Let's get rid of these people. We could save $5 a head. Well, again, the purpose of the electoral college is different in different states. In 20 states, they're not bound. They can exercise this freedom. That's a choice that those states have made, so the function in those states is slightly different. But in 30 states and the District of Columbia, those states and the District of Columbia have said, this is a ministerial task, it's a clerical task, similar to a canvassing board, to certify and transmit the vote to Congress. Thank you. Thank you. Your Honors, two points on reply. First, I think the state's argument ignores the key purpose of the electoral college, which was to separate powers and protect the president, the election of the president, from ultimate control by the states. What you've heard from the state is that its belief is that the appointment power in Article II... ...the process from the state. The state appoints electors. That's right. The state appoints electors. And what Mr. Sullivan essentially said was that the state gets to keep appointing electors until those electors do exactly what the state says. But, Judge Holmes, I think that's more than a condition. That's ultimate control. That goes to Judge Briscoe's question earlier, which is, what's the point of electors? If the state gets to keep replacing electors time and time again until they do exactly what the state says, that's not an electoral college. That's not an appointment power, Your Honor. That's just the state dictating the results of an election. The state can't... So, in fact, it's counter-majoritarian for somebody to say, oh, no, I'm not going to do that. I'm going to do something else. So the law in Colorado is actually fulfilling the people's will. Your Honor, I understand that Colorado is trying to fulfill the people's will, but they can only go so far in a system of separated powers. That's the point of the electoral college dating back to 1789. And, Judge McHugh, as you pointed out, that's the point of the 12th Amendment. There were anomalous votes. There were faithless votes in 1796 and 1800. And the framers of the 12th Amendment preserved that freedom for whatever reason. Perhaps that some electors here thought it would do more to preserve the will of the voters in order to exercise their discretion. With respect, Your Honor, I think silence does tell us one thing because it's not just silence. As Judge McHugh pointed out, the 12th Amendment is extraordinarily detailed about the role of electors vis-a-vis the state and state officials. And there's just no role for state officials to control that vote. The second point, though, is about, I think, the role of the court in defining what electors are. Electors are used several times in the Constitution. They apply to voters. They apply to presidential electors. And if this court were to hold that, to use Mr. Sullivan's phrase, electors here perform a clerical task, then I don't see how it's possible to say that the same word, elector, can be defined differently with respect to voters. Well, Judge Holmes, I mean, the Supreme Court rejected a kind of attempt in the Thornton case, the term limits case, where the state of Arkansas tried to prevent voters from exercising their franchise to vote for senators who had served more than two terms or representatives who had served more than three terms. And the Supreme Court said, absolutely not. That's a kind of condition. That's a kind of control over the electorate, over, quote, electors. An elector is a constitutional office that may not be controlled in that way. And if Thornton is correct, and it is, it's a Supreme Court law, there's no daylight between those kind of electors and the impermissible control and the impermissible control that the state exercised here over my clients, unless there are any further questions. Thank you. Thank you, counsel. Thank you both for your arguments this morning. The case is submitted.